MAGISTRATE JUDGE MICHELLE L. PETERSON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR20-149-RAJ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM IN SUPPORT OF RELEASE |
| | ) | |
| JACOB D. LITTLE, | ) | |
| Defendant. | ) | |

Jacob Little submits this memorandum to provide the Court with additional information before the September 15, 2020, 9:00 am detention hearing.

Mr. Little is 24 years old with no criminal history. If the allegations contained in the complaint are accurate, it shows a young man who got caught up in the moment and made a stupid decision that does not reflect the caring, hard-working, and loyal son that he is. Attached as Exhibit 1 are multiple support letters that his friends and family have submitted on his behalf. These letters show that, at his core, Mr. Little is a kind, generous, and hard-working young man. He does not pose a danger to the community, especially if supervised by U.S. Probation and Pretrial Services. He is also not a flight risk, having lived in the Everett area his entire life with strong family and community support.

//

//

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

## I.      Proposed Release Plan

Mr. Little, age 24, proposes that he be released to live with his parents, with whom he has lived for virtually all of his young life. While the defense does not believe that location monitoring is necessary, Mr. Little will comply with monitoring if it is imposed. His parents are willing to assist with supervision in any way possible. If the Court deems location monitoring appropriate, the defense requests stand-alone monitoring or, at most, curfew monitoring. The defense anticipates that Pretrial Services will recommend that, if released, Mr. Little obtain a chemical dependency assessment and comply with recommended treatment. He has no objection to such a condition.

This is the first time that Mr. Little has been held in custody. He understands that any bond violations could cause him to be returned to confinement. He will take all conditions seriously.

## II.  Procedural History

This offense allegedly took place on May 30, 2020, during the turbulent early stages of protests related to murder of George Floyd. It is alleged that Mr. Little took a duffle bag containing a firearm out of a burned out SPD vehicle. Dkt 1. The Government does not allege that Mr. Little caused the vehicle fire.

After some investigation, officers took Mr. Little into custody without incident on July 20, 2020, searched his home, and eventually released him from custody to his parents. Dkt 1 § 37.

After further investigation, Mr. Little self-surrendered to officers on September 4, 2020, the day after he learned of the new arrest warrant. The defense does not have discovery regarding the most recent arrest, but, according to Mr. Little's parents, the police arrived at their home on September 3, 2020, in order to arrest Mr. Little. However, he was not home at the time. The officers told his parents that they would be

MEMORANDUM IN SUPPORT OF RELEASE
(*United States v. Little*, CR20-149-RAJ) - 2

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1  back the following day, September 4, 2020, at noon. The next day, Mr. Little was at his

2  parents' home waiting for law enforcement when they arrived to arrest him. Mr. Little's

3  self-surrender is weighs heavily in favor of release on bond.

### III.  Mr. Little's Background and Connections to this District

5          Mr. Little was born in Seattle and he has spent his entire life in the

6  Seattle/Everett area. He has primarily lived with his parents, although he has, at times,

7  lived with friends for short periods of time.

8          In 2015, his father had a serious accident which required months of

9  rehabilitation. His mother stopped working to care for her husband. Mr. Little started

10  working two jobs to help support them and stayed home with them rather than moving

11  out. Three years ago, his parents lost their home in a fire, and, again, Mr. Little

12  supported his parents. *See* Exhibit 1 (Shelley Little letter). He has a younger sister with

13  whom he is very close and who has submitted a letter to the Court. Exhibit 1 (Tiffany

14  Little letter).

15          While the initial investigation caused some friction with his parents, they are

16  firmly behind their son and willing to assist in his supervision. The remarkable support

17  letters from his family and friends demonstrate that his friends and family will rally

18  around Mr. Little to support him in a positive and pro-social way.

19          Mr. Little also has a strong employment history. Even if he cannot return to the

20  job he held at the time of his arrest, he has demonstrated a strong work-ethic and the

21  ability to quickly find employment.

### III. Mr. Little's Criminal History

23          Mr. Little has no prior criminal history. His only prior arrest, in 2016, involved a

24  disorderly conduct charge that was ultimately dismissed.

25  //

26

MEMORANDUM IN SUPPORT OF RELEASE
(*United States v. Little*, CR20-149-RAJ) - 3

**V.      The Bail Reform Act**

The Bail Reform Act (BRA) provides for release of a person upon a "any condition or combination of conditions" if those conditions "will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). The statute thus presumes release absent a judicial finding that no conditions exist that will reasonably assure the twin goals it describes. It does not require certain or near-certain assurance of appearance and community safety—just that the conditions will provide reasonable assurance. In this way, the statute balances the judicial process, community safety, and the presumption of innocence by avoiding unnecessary detention of people presumed innocent. The BRA provides for a rebuttable presumption of detention only where a person is accused of committing a small subset of statutes. 18 U.S.C. § 3142(e). This case does not fall into that subset and no presumption of detention applies here. *Id.*

The Government will likely emphasize the serious nature of the charge. While the offense is serious, nothing about the charge dictates that Mr. Little be detained. Congress did not include the offense in BRA's list of rebuttable presumption offenses. It could have but chose not to.

Mr. Little is, of course, presumed innocent. Assuming he is the individual who took the firearm, there is no evidence that Mr. Little has engaged in similar activity. He has no criminal history. He has no history of theft-related offenses or firearm offenses.

In this District, judges have released other defendants charged with protest related offenses, some involving far more dangerous behavior. *See U.S. v. Horner*, MJ20-553-MAT, (Unlawful Possession of Destructive Device: a Molotov cocktail was seized after defendant was seen breaking windows during protests); *U.S. v. Parker*, MJ20-324-MLP (Unlawful Firearm Possession, defendant threw a bottle at police and was in possession of an improvised short-barrelled shotgun. Defendant was released to

MEMORANDUM IN SUPPORT OF RELEASE
(*United States v. Little*, CR20-149-RAJ) - 4

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

live with parents in South Carolina); *U.S. v. Channon*, MJ20-336-BAT (Multiple counts of Arson, defendant set multiple SPD vehicles on fire during course of protests). Nationally, courts have released numerous defendants charged in protest cases involving arson, firearms, and destructive devices. Exhibit 2 (Protest cases chart). Courts have seen fit to release people facing similar charges stemming from incidents involving more aggravated attacks (such as cases involving use of Molotov cocktails.) While each detention assessment is individualized, these cases reflect the reality that cases arising out of the protests do not present unmitigable risk of flight or danger.

**VI.    Conclusion**

Mr. Little is 24 years old with no prior convictions and very little prior contact with law enforcement. He has a strong network of social support and an excellent work history. Under the Bail Reform Act, he should be released because he is neither a flight risk nor a danger to the community. His parents rely on him for financial support. The Bail Reform Act presume release on bond, reserving detention for only rare cases. A faithful application of these standards warrants release.

Release is also warranted in light of the COVID-19 outbreak at the FDC Seatac. As the Court knows, inmates cannot maintain social distancing at the FDC Seatac. The fewer inmates at the FDC Seatac, the easier it is for the institution to limit the spread of COVID-19 among inmates.

DATED this 14th day of September, 2020.

Respectfully submitted,

s/ *Dennis Carroll*
Assistant Federal Public Defender
Attorney for Jacob Little

MEMORANDUM IN SUPPORT OF RELEASE
(*United States v. Little*, CR20-149-RAJ) - 5

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**